Rockingham
No. 86-184

ERA PAT DEMARAIS ASSOCIATES, INC.

v.

ALEXANDER EASTMAN FOUNDATION

December 31, 1986

*Sanders and McDermott P.A.*, of Hampton (*Lawerence M. Edelman* on the brief and orally), for the plaintiff.

*McLane, Graf, Raulerson & Middleton P.A.*, of Manchester (*Robert E. Jauron* and *Steven V. Camerino* on the brief, and *Mr. Jauron* orally), for the defendant.

BATCHELDER, J. The plaintiff seeks to recover a broker's commission for real estate sold by the defendant. The defendant moved for summary judgment, on the dual grounds that the New Hampshire Real Estate Commission rules require broker's listing agreements to be in writing and that the plaintiff had failed to produce any evidence that the defendant had created a brokerage relationship in writing or otherwise. The Superior Court (*Temple*, J.) granted summary judgment for the defendant. We affirm.

The defendant owned and operated a hospital in Derry. The transaction that underlies the plaintiff's claim is the defendant's sale of the hospital building to John Hawthorne. The plaintiff's counter-affidavit in response to defendant's summary judgment motion stated that on June 20, 1984, the Rockingham County Superior Court, pursuant to RSA 564:14, authorized the Alexander Eastman Foundation to sell its building for not less than $460,000. The plaintiff also admitted that the foundation did not contact any real estate agency, including the plaintiff, to help it sell the building. Instead it advertised in local newspapers. In October, Judi McGillen, one of the brokers employed by the plaintiff, made an unsolicited call to Richard Buckley, the president of the foundation, to inquire about the status of the building and to inform him that she had two customers who might be interested in the hospital building. Buckley replied that a prospective buyer had already paid a deposit. Both parties agree that they did not discuss a brokerage arrangement at that time. Prior to this conversation, McGillen had never had any professional contact with the foundation or the hospital.

On November 21, 1984, after the failure of the earlier effort to sell was publicized in the *Derry News*, John Hawthorne telephoned

Buckley to express an interest in purchasing the property. Two days later, McGillen called Buckley to ask if she could accompany Hawthorne on the latter's visit to the hospital. In this conversation, McGillen explained that she wanted to be there because Hawthorne was her customer. Buckley consented to her request, but they did not discuss entering into a brokerage arrangement, and Buckley gave her no information concerning the building. McGillen's knowledge about the building came only from her visit as a patient twenty-one years earlier. When the three met at the hospital, Buckley conducted the tour and answered all of Hawthorne's questions.

After this tour, McGillen told Buckley that she believed Hawthorne wished to make an offer. Buckley told her to present the offer to the foundation's attorney. This she did, but Buckley's attorney rejected it for several reasons, including its inclusion of a clause stating that the foundation agreed to pay the plaintiff a broker's commission. Ultimately, the foundation sold the property to Hawthorne on March 1, 1985, for $600,000.

On appeal, the plaintiff makes the following two arguments: (1) that N.H. ADMIN. CODE Rea 404.5, requiring brokers' listing agreements to be in writing, exceeds the authority delegated by the legislature to the real estate commission, as the enabling legislation did not express a clear intent to abrogate the common law that agencies could be created orally or by conduct; and (2) that the plaintiff's counter-affidavit, taken with McGillen's deposition, raised a genuine issue of fact that the defendant created an agency, orally and by his acquiescence in the plaintiff's conduct. We find, however, that since the record shows the defendant did not create an agency, we need not address the validity of the real estate commission's rules.

■■ We turn our attention to the principles of agency and whether the defendant created an agency relationship with the plaintiff. The cardinal principle of agency creation is "[a]n agency relationship exists only if there has been a manifestation by the principal to the agent that the agent may act on [the principal's] account. . . ." *Richardson v. Sibley*, 101 N.H. 377, 379, 143 A.2d 414, 416 (1958) (adopting RESTATEMENT OF AGENCY § 15). According to the common law, *93 Clearing House, Inc. v. Khoury*, 120 N.H. 346, 348–49, 415 A.2d 671, 673 (1980), the principal's manifestation or consent to an agent need not to be written. "It may be implied from the parties' conduct or other evidence of intent." *Id.* at 349, 415 A.2d at 673.

We start by noting that the plaintiff had no contract with the defendant before the transaction which is the subject of this appeal. Furthermore, the parties' contacts during the present transaction

were minimal. The plaintiff has alleged no pattern of conduct in the case at bar which could be construed to show that the defendant acquiesced to an agency relationship with the plaintiff. The fact that Buckley permitted McGillen to accompany Hawthorne during the hospital tour and to present Hawthorne's offer to the foundation's attorney is insufficient to create an agency relationship between the parties. If anything, these facts suggest such a relationship between the plaintiff and Hawthorne, a suggestion which is enhanced by McGillen's statement to Hawthorne that she felt "the [foundation's] trustees were playing games with him." Thus, we turn our inspection toward evidence of the defendant's affirmative conduct.

McGillen's counter-affidavit concentrates mainly on her own conduct and states almost nothing regarding Buckley's conduct. She does not allege that Buckley told her she was the foundation's agent or that the foundation would pay her a commission. She states "[t]hat in my conversations with Mr. Buckley it was clear that I was seeking to earn a commission with respect to the sale of the defendant's property . . . ." We observe that McGillen states in her deposition that she and Buckley never discussed commissions. In any event, the allegation that she made it clear she was seeking a commission would not allege a fact material to the determinative legal issue of whether Buckley offered her a commission or a listing. Similarly, her allegation that she introduced Hawthorne to Buckley and interested him in the property is contradicted by her own deposition and, even if it were true, it would not be evidence regarding Buckley's manifestation of an intent to create an agency.

Under RSA 491:8-a, the trial court will grant summary judgment when it finds no genuine issue of material fact, taking the affidavits and any other evidence on file most favorable to the party opposing the motion, *McElroy v. Gaffney*, 123 N.H. 58, 60, 457 A.2d 429, 430 (1983), and when the moving party is entitled to judgment as a matter of law. *Arsenault v. Willis*, 117 N.H. 980, 983, 380 A.2d 264, 266 (1977). The opposing party's affidavit must do more than state general denials or allegations. It must set forth specific facts showing a genuine issue for trial. RSA 491:8-a, IV. We have examined the record for specific facts set forth by the plaintiff which show that the defendant created a broker's listing contract, and we find the facts insufficient to create a brokerage relationship. Nothing in the record raises any triable issue of material fact concerning words or conduct by Buckley, or any other representative of the Alexander Eastman Foundation, that manifested an intent to create a broker's listing arrangement with the plaintiff.

*Affirmed.*

All concurred.